Gifford W. Price, Esq. (Bar No. 2647)
Randall A. Mackey, Esq. (Bar No. 2042)
MACKEY PRICE & MECHAM
350 American Plaza II
57 West 200 South
Salt Lake City, UT  84101
Phone:  (801) 575-5000

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITYNATIONAL MORTGAGE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>AURORA BANK FSB (formerly known as Lehman Brothers Bank, FSB) and AURORA LOAN SERVICES LLC,<br><br>Defendants. | **COMPLAINT**<br>**(and Jury Demand)**<br><br>Case No. 2:11-cv-00434-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff SecurityNational Mortgage Company ("Plaintiff" or "SecurityNational Mortgage"), for claims for relief, alleges as follows.

## PARTIES

1. Plaintiff is a Utah corporation with its principal place of business in Utah.

2. Defendant Aurora Bank FSB ("Aurora Bank") is a federal savings bank and, upon information and belief, its principal place of business is in Delaware.

3. Defendant Aurora Loan Services LLC ("Aurora Loan Services") is a Delaware limited liability company and, upon information and belief, its principal place of business is in Colorado. It is a subsidiary of Aurora Bank.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. § 1332(a) as the dispute is between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

5. Personal jurisdiction exists relative to Defendants, including pursuant to Utah Code Ann. § 78B-3-201 et seq.

6. Venue is proper, including under 28 U.S.C. § 1391(a) and (c).

## FACTUAL BACKGROUND

7. SecurityNational Mortgage has engaged, and continues to engage in the business of processing residential loans and other loans. With respect to this business, it has sold, and continues to sell, mortgage loans to various entities.

8. On or about May 28, 1998, SecurityNational Mortgage entered into a loan purchase agreement with Aurora Loan Services, Inc., which upon information and belief, is now known as Aurora Loan Services, LLC.

2

9. Thereafter, on or about April 15, 2005, SecurityNational Mortgage entered into a loan purchase agreement with Lehman Brothers Bank, FSB ("Lehman Bank"), which is now known as Aurora Bank FSB.

10. For several years, SecurityNational Mortgage sold mortgage loans to Lehman Bank, of which certain sales were facilitated through Aurora Loan Services.

11. Thereafter, Lehman Bank sold a substantial number of the loans purchased from SecurityNational Mortgage to Lehman Brothers Holdings, Inc. ("Lehman Holdings") on a non-recourse basis. On information and belief, a substantial number of those loans, if not all, were sold to Lehman Holdings prior to December 17, 2007.

12. On or about December 17, 2007, Lehman Bank and Aurora Loan Services entered into what is entitled "Indemnification Agreement" with SecurityNational Mortgage. The Indemnification Agreement allegedly came into existence as a result of mortgage loan matters relating to the purchase of loans involving Lehman Bank and Aurora Loan Services. SecurityNational Mortgage has been in compliance with the Indemnification Agreement.

13. Among other things, with the execution of the Indemnification Agreement, it was contemplated that Lehman Bank and/or Aurora Loan Services would continue to purchase loans from SecurityNational Mortgage which, through basis point holdbacks, would assist SecurityNational Mortgage in making payments asserted to be due under the Indemnification Agreement. However, approximately a month after execution of the Indemnification Agreement, such loan purchasing ceased on the part of Lehman Bank and Aurora Loan Services.

14. Although not following proper procedures under the Indemnification Agreement, demands for payments were made on behalf of Lehman Bank, including through Aurora Loan

Services, and as a result thereof, substantial payments in excess of $4,000,000 were made by SecurityNational Mortgage purportedly pursuant to the Indemnification Agreement.

15. Although on or about March 28, 2011, an Assignment Agreement was entered into among Aurora Bank, Aurora Loan Services, and Lehman Holdings relative to the purported assignment of the Indemnification Agreement to Lehman Holdings, the payments made by SecurityNational Mortgage referenced herein were made prior to such purported assignment.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

16. Plaintiff incorporates the allegations of paragraphs 1-15 as if fully set forth.

17. On information and belief, at the time the Indemnification Agreement was entered into with SecurityNational Mortgage, neither Lehman Bank nor Aurora Loan Services owned the loans which had been purchased from SecurityNational Mortgage and set forth in Schedule A to the Indemnification Agreement, as well as not owning other loans outside Schedule A for which payment was sought from SecurityNational Mortgage and for which SecurityNational Mortgage made payment with respect thereto.

18. Further, neither Lehman Bank nor Aurora Loan Services had alleged "Losses" as defined in Section 1 of the Indemnification Agreement to support or justify the amount of demands for payment allegedly made pursuant to the Indemnification Agreement.

19. In view of the circumstances, including the non-ownership of loans by Lehman Bank that had been purchased from SecurityNational Mortgage, and not incurring Losses in relation to payments demanded, there was no basis under the Indemnification Agreement for the

amount of payments claimed by Lehman Bank, as well as by Aurora Loan Services on its behalf or that of Lehman Bank, to be made by SecurityNational Mortgage.

20. Due to the demands of Lehman Bank, as well as Aurora Loan Services on its behalf or that of Lehman Bank, millions of dollars were paid by SecurityNational Mortgage not required by the Indemnification Agreement.

21. In failing to follow proper procedure, including not incurring Losses in relation to payments demanded, and not owning certain loans, and in having SecurityNational Mortgage pay more than required pursuant to the Indemnification Agreement, Lehman Bank and Aurora Loan Services materially breached the Indemnification Agreement, and SecurityNational Mortgage is entitled to judgment against Lehman Bank, as well as Aurora Loan Services to the extent of its involvement and complicity with Lehman Bank, for an amount in excess of $4,000,000, as determined at trial.

## **SECOND CLAIM FOR RELIEF**
(Breach of Contract)

22. SecurityNational Mortgage incorporates the allegations of paragraphs 1-21 as if fully set forth.

23. In material breach of the "sunset provision" in Section 2 of the Indemnification Agreement, and related sections, SecurityNational Mortgage was requested to, and pursuant to the demands, made payments that were not required by the Indemnification Agreement. For example, numerous loans wherein payment was improperly demanded from SecurityNational Mortgage and payments made pursuant thereto were within the provision of Section 2 referring to

being "foreclosed, liquidated or otherwise retired and the related Mortgaged Property or REO Property has been liquidated," thus not requiring payment.

24. Due to the actions of Lehman Bank and Aurora Loan Services, SecurityNational Mortgage paid a substantial amount that was not required by the Indemnification Agreement.

25. Lehman Bank and Aurora Loan Services materially breached the Indemnification Agreement and, as a result, SecurityNational Mortgage is entitled to judgment against Lehman Bank, as well as Aurora Loan Services for its involvement and complicity with Lehman Bank, for millions of dollars represented by payments that were not necessary, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
(Unjust Enrichment)

26. SecurityNational Mortgage incorporates the allegations of paragraphs 1-25 as if fully set forth.

27. In the alternative, SecurityNational Mortgage paid more than $4,000,000 due to the demands of Lehman Bank, as well as Aurora Loan Services on its behalf or that of Lehman Bank, which payments were not due and owing.

28. Aurora Bank, and Aurora Loan Services, in equity and good conscience, are not entitled to retain such funds paid and respectively received by each Defendant. The funds should be required to be returned or paid to SecurityNational Mortgage, as otherwise Aurora Bank and Aurora Loan Services will be unjustly enriched.

WHEREFORE, Plaintiff asks that judgment be granted as follows:

1. With respect to the First Claim for Relief, that judgment be entered against Lehman Bank, as well as Aurora Loan Services to the extent of its involvement and complicity with Lehman Bank, for an amount in excess of $4,000,000, as determined at trial.

2. With respect to the Second Claim for Relief, that judgment be entered against Lehman Bank, as well as Aurora Loan Services to the extent of its involvement and complicity with Lehman Bank, for millions of dollars, as determined at trial.

3. With respect to the Third Claim for Relief, in the alternative, that judgment be entered against Lehman Bank, and Aurora Loan Services, to the extent of their respective receipt of funds from SecurityNational Mortgage, for funds paid by SecurityNational Mortgage which exceed $4,000,000, as determined at trial.

4. That Plaintiff be awarded its costs, as well as interest and reasonable attorney fees as permitted in law and equity.

5. That Plaintiff be awarded such other and further relief deemed appropriate in the premises.

Plaintiff demands a jury for all matters triable by a jury.

DATED this 11th day of May, 2011.

                                                MACKEY PRICE & MECHAM

                                                By: /s/ Gifford W. Price
                                                     Gifford W. Price
                                                     Randall A. Mackey
                                                     Attorneys for Plaintiff

Plaintiff's Address:
360 West 5300 South
Murray, UT 84123