IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITYNATIONAL MORTGAGE COMPANY,<br><br>                    Plaintiff,<br><br>v.<br><br>AURORA BANK FSB (formerly known as Lehman Brothers Bank, FSB) and AURORA LOAN SERVICES LLC,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER**<br>• **GRANTING SECURITYNATIONAL'S [128] MOTION FOR PARTIAL SUMMARY JUDGMENT AND**<br>• **DENYING DEFENDANTS' [120] MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE AFFIRMATIVE DEFENSE OF OFFSET AND REPLENISHMENT**<br><br>Case No. 2:11-cv-00434 DN<br>District Judge David Nuffer |

Defendants moved for partial summary judgment on their affirmative defense of offset and made a claim for replenishment.[1] The motion was opposed[2] and a reply was filed.[3] In addition, SecurityNational Mortgage Company (SecurityNational) filed a cross motion[4] seeking relief in its favor on the same issues of offset and replenishment. The Cross Motion was opposed[5] and replied to.[6] This order grants SecurityNational's cross motion and denies Defendants' motion.

---

[1] Defendants' Motion for Partial Summary Judgment on the Affirmative Defense of Offset and Replenishment ("Motion"), docket no. 120, filed February 27, 2015.

[2] Response of SecurityNational Mortgage Company in Opposition to Defendants' Motion for Partial Summary Judgment and Objections ("Opposition"), docket no. 125, filed March 30, 2015.

[3] Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment on the Affirmative Defense of Offset and Replenishment ("Reply"), docket no. 129, filed April 16, 2015.

[4] SecurityNational's Motion for Partial Summary Judgment ("Cross Motion"), docket no 128, filed March 30, 2015.

[5] Memorandum in Opposition to SecurityNational Mortgage Company's Motion for Partial Summary Judgment ("Cross Motion Opposition"), docket no. 131, filed April 30, 2015.

[6] Reply in Further Support of SecurityNational's Motion for Partial Summary Judgment ("Cross Motion Reply"), docket no 133, filed May 18, 2015.

**Contents**

BACKGROUND INFORMATION .................................................................................. 2

    Nature of this Case................................................................................................ 2

    The Related Case ................................................................................................. 4

    Graphic View of Parties, Contracts and Stated Claims ................................... 5

    Prior Summary Judgment .................................................................................. 6

CURRENT MOTIONS ............................................................................................... 7

SUMMARY OF FACTS ............................................................................................. 8

    Loan Purchase Agreement and Seller's Guide ................................................. 9

    Indemnification Agreement .............................................................................. 10

    Notice Under Indemnification Agreement....................................................... 13

    IA Assignment .................................................................................................. 14

DISCUSSION ......................................................................................................... 16

    Defendants Waived their Rights  under the Indemnification Agreement.......... 16

    Defendants Have No "Right to Replenishment" .............................................. 20

CONCLUSION ........................................................................................................ 21

ORDER .................................................................................................................. 22

# BACKGROUND INFORMATION

## Nature of this Case

The claims of SecurityNational arise out of the relationship of SecurityNational as seller and Defendants[7] as buyers of mortgage loans. The parties entered into a Loan Purchase Agreement (LPA) dated April 15, 2005, which governed their relationship. It incorporated provisions of a Seller's Guide. The parties later entered into an Indemnification Agreement dated December 17, 2007 which purported to govern the parties' obligations on bad loans. The Indemnification Agreement provided structure and procedures for SecurityNational to cover losses Defendants suffered on loans they purchased from SecurityNational under the LPA.

---

[7] The relationship of the Defendants and their predecessors is not simple to understand and, in most instances, not essential to understand. For those reasons, this order refers to them as "Defendants." But because some documents and papers refer to them by entity name, this note attempts to explain their relations. Lehman Brothers' Bank FSB ("LBB") purchased mortgages from SecurityNational. Currently, the entity known as LBB is called Aurora Bank FSB. Aurora Loan Services, LLC (Aurora Loan Services) was nominally the *servicer* on the loans. The relationship and function of Aurora Loan Services is somewhat confused in the Defendants' documentation. *See* Summary of Facts, Conclusions of Law and Amended Order Granting SecurityNational's Motion for Summary Judgment ("Amended Summary Judgment Order") at 9-14 and ¶ 20 at 19-20, docket no. 115, filed December 24, 2014. Lehman Brothers Holdings Inc. ("LBHI") is the parent corporation of LBB/Aurora Bank FSB. SecurityNational has no direct contractual relationship with LBHI.

SecurityNational's complaint alleges two breach of contract claims[8] and an unjust enrichment claim.[9] Security National alleges that certain payments demanded of it under the Indemnification Agreement – and made by it – and disbursed from a deposit account set up under the Indemnification Agreement – were not required to be made. SecurityNational sought refund of those payments, with incidental relief.

Defendants' answer asserts a pertinent affirmative defense:

SecurityNational Mortgage's damages, if any, are limited in whole or part by offset for sums still owed by SecurityNational Mortgage under the Indemnification Agreement.[10]

Many of the loans SecurityNational sold to Defendants under the LPA were later sold by Defendants to Lehman Brothers Holdings Inc. (LBHI). To facilitate LBHI's position as owner of these loans, Defendants and LBHI executed an Assignment Agreement[11] under which Defendants transferred their rights in the Loan Purchase Agreement[12] (and related documents) to LBHI. This document was later amended and is referred to in this order as the LPA Assignment.[13]

---

[8] The first breach of contract claim appears to assert that breach occurred because Defendants did not own loans for which Losses were claimed under the Indemnification Agreement. Complaint ¶ 19, docket no. 2, filed May 11, 2011. The second breach of contract claim appears to assert breach because Defendants claimed reimbursement for loans after they were "foreclosed, liquidated or otherwise retired and the related Mortgaged Property or REO Property has been liquidated" contrary to section 2 of the Indemnification Agreement. Complaint ¶ 23.

[9] Complaint at 6.

[10] Answer at 4, ¶ 4, docket no. 20, filed July 14, 2011.

[11] Assignment Agreement dated as of September 2, 2008  ("LPA Assignment"), Ex. C to Decl. of Jeffrey Heston Gray Supporting Defendants' Motion for Partial Summary Judgment ("Gray Decl."), docket no. 124-4, filed under seal Feb. 27, 2015.

[12] Loan Purchase Agreement dated as of April 15, 2005 ("LPA"), Ex. A to Gray Decl., docket no. 124-2, filed under seal Feb. 27, 2015.

[13] The LPA Assignment was amended by an Amendment to the September 2, 2008 Assignment Agreement between Lehman Brothers Bank, FSB, as Assignor and Lehman Brothers Holdings, Inc., as Assignee dated as of June 25, 2010, Ex. D to Gray Decl., docket no. 124-5, filed under seal Feb. 27, 2015.

Many of the issues in this case are caused by another assignment agreement entered into between Defendants and LBHI. This Indemnification Agreement assignment (the "IA Assignment")[14] transferred Defendants' rights under the Indemnity Agreement to LBHI in 2011. The IA Assignment is important to the motion and cross-motion currently under review because through the IA Assignment, Defendants waived certain rights. LBHI is not a party to this case.

**The Related Case**

LBHI is plaintiff in a Related Case pending before Judge Stewart.[15] Defendants in this case are not parties to that case, but SecurityNational is the defendant in that case.

In the Related Case, LBHI seeks damages from SecurityNational for breach "of the Loan Purchase Agreement and Seller's Guide"[16] and breach of express warranties under the Loan Purchase Agreement and Sellers' Guide.[17] LBHI's amended complaint alleges "LBB[18] . . . assigned to LBHI all of its rights and remedies under the Loan Purchase Agreement and Seller's Guide with respect to the Loans."[19] This is apparently a reference to the LPA Assignment.

LBHI also alleges that "LBB and Aurora assigned their rights and remedies under the Indemnification Agreement to LBHI."[20] No assignment is attached to that Related Case complaint, but this is apparently a reference to the IA Assignment. In the Related Case, LBHI

---

[14] Assignment Agreement between Aurora Bank FSB, and Aurora Loan Services, LLC, as Assignor and Lehman Brothers Holdings Inc., as Assignee dated Mar. 28, 2011 ("IA Assignment"), Ex. 13 to Declaration of Gifford W. Price ("Price Decl."), docket no. 47-12, filed under seal Sep. 4, 2012.

[15] *Lehman Brothers Holdings Inc. v. SecurityNational Mortgage Company*, Case No. 2:11-cv-00519-TS.

[16] First Cause of Action, Amended Complaint ("LBHI Amended Complaint"), filed in *Lehman Brothers Holdings Inc. v. SecurityNational Mortgage Company*, Case No. 2:11-cv-00519-TS, document no. 23, filed January 5, 2012.

[17] *Id.* at 11-12, ¶¶ 54-61.

[18] *See* n. 7 for identification of LBB.

[19] LBHI Amended Complaint ¶¶ 1, 12.

[20] *Id.* ¶ 45.

does not state any claim against SecurityNational under the Indemnification Agreement but only relies on the LPA.

The Related Case is set for trial in December 2016.

### Graphic View of Parties, Contracts and Stated Claims

For both cases, this graphic illustrates the **parties** (**bold**, in boxes); the contracts (in standard type); and the *claims* and a *defense* (in *italics*) stated in the two cases. Defendants make no claim for affirmative relief in this case.

The LPA is not the subject of any claim or defense in this case. The Indemnification Agreement is not the basis of any claims in the Related Case. LBHI is not a party in this case. Defendants are not parties in the Related Case.



**Prior Summary Judgment**

Cross motions were filed seeking summary judgment on SecurityNational's claims. [21] The motions were heard[22] and an order was entered. [23] A motion to reconsider was filed,[24] supplemental briefing was ordered[25] and another hearing was held.[26] The motion to reconsider was granted[27] and an Amended Summary Judgment Order was entered.[28]

The Amended Summary Judgment Order determined that funds deposited by SecurityNational under the Indemnification Agreement were improperly applied to losses incurred by LBHI on loans it obtained from Defendants and that SecurityNational was entitled to return of those funds, with interest. This conclusion was based on New York law limiting the scope of indemnity agreements. In spite of being assigned to LBHI, the Indemnification Agreement cannot indemnify LBHI for its losses on the loans SecurityNational originated.[29] The Amended Summary Judgment Order determined that out of a total of $4,281,319.27 that SecurityNational paid into the deposit account, $3,892,973.70 was paid on loans that Lehman Bank transferred to LBHI.

---

[21] SecurityNational Mortgage Company's Motion for Summary Judgment, docket no. 45, filed under seal September 4, 2012; Defendants' Motion for Summary Judgment, docket no. 52, filed under seal October 11, 2012.

[22] Minute Order, docket no. 80, filed under seal February 27, 2013.

[23] Summary of Facts, Conclusions of Law and Order Granting SecurityNational's Motion for Summary Judgment, docket no. 94, filed May 6, 2014.

[24] Defendant's Motion to Reconsider Summary Judgment Ruling, docket no. 100, filed May 27, 2014.

[25] Docket Text Order, docket no. 103, filed May 27, 2014.

[26] Minute Entry, docket no. 107, filed June 2, 2014.

[27] Memorandum Decision and Order Granting in Part and Denying in Part Defendants' [100] Motion to Reconsider Summary Judgment Ruling, docket no. 114, filed December 23, 3014.

[28] Amended Summary Judgment Order.

[29] *Id.* at 27, ¶ 35.

The Amended Summary Judgment Order resolved the claims of SecurityNational in this case. The order did not adjudicate Defendants' affirmative defense of offset or any obligation of SecurityNational to replenish the deposit fund set up under the Indemnification Agreement.[30]

## CURRENT MOTIONS

These current motions were filed after the parties' Joint Motion to Schedule Disposition of Remaining Issues[31] was granted. The order effectuated the parties' agreement that:

- Defendants shall submit a motion for determination of their affirmative defense of offset, and the related issue of replenishment of the deposit fund at issue in this case, on or before February 28, 2015. The motion will describe the legal and factual basis for offset and replenishment, and will identify factual issues requiring trial, if any.
- In the absence of further order from the Court, the briefing on the above-referenced motion will proceed according to the deadlines established by DUCivR 7-1, except that Plaintiff may have to and including March 30, 2015 in which to file a response memorandum, as well as a motion if so desired.
- Pursuant to the Court's Amended Order, no other claimed issues are identified.
- In agreeing to a schedule, neither party waives any rights, defenses or positions of any kind, including, but not limited to, whether offset and replenishment are actually remaining issues.[32]

Defendants' motion claims "Lehman Bank has valid rights to setoff its own loan losses against the judgment resulting from the Court's summary judgment ruling."[33] This claim is based on the affirmative defense that "SecurityNational Mortgage's damages, if any, are limited in

---

[30] The Amended Summary Judgment Order at 1, n. 1, explains that it removed paragraphs 21-24 on page 25 of the original order, added paragraph 16A of the Conclusions of Law and modified paragraph 38 of the Conclusions of Law. Paragraphs 39-44 of the Conclusions of Law were also added, based on filings after the summary judgment hearing which are referenced in those paragraphs.

[31] Joint Motion to Schedule Disposition of Remaining Issues, docket no. 116, filed Jan. 16, 2015.

[32] Order Granting Joint Motion to Schedule Disposition of Remaining Issues, docket no. 117, filed January 20, 2015.

[33] Motion at 19.

whole or part by offset for sums still owed by SecurityNational Mortgage under the

Indemnification Agreement."[34]

Defendants' motion also claims that "because the waiver of Lehman Bank's rights in the

[IA] Assignment Agreement is ineffective and contrary to the parties' intention, the

Indemnification Agreement also remains in effect, and creates a continuing obligation for

SecurityNational to replenish the deposit account to cover future losses."[35] Defendants' Answer

contains no defense or claim of replenishment or specific performance of the Indemnification

Agreement.

## SUMMARY OF FACTS

This summary of facts is derived from the Motion Statement of Facts (Motion at 3-11,

Opposition Response to Statement of Facts (Opposition at v – xxi) and Opposition Statement of

Additional Facts (Opposition at xii – 1). Largely, these "facts" are recitations of documents or

matters already adjudicated. The summary uses the parties' language and document identifiers

except where noted.

This summary of facts does not include some proffered facts:

- Defendants' alleged losses on loans,[36] rendered irrelevant by this order's decision about waiver;
- Testimony about the intent or content of documents[37] for which parol evidence is

---

[34] Answer at 4.

[35] Motion at 19.

[36] Motion at 10, ¶ 26 (citing Gray Decl. ¶¶ 7-10, 23) and Exs. F and S to Gray Decl.. Opposition at xix-xxi, ¶ 26 (objecting to the word "properly" in the Motion statement). SecurityNational agreed "[t]he document referenced has the figure $639,962.93." Motion at 10, ¶ 27 (citing Gray Decl. ¶¶ 11-23 and Exs. F and S to Gray Decl.). Plaintiff denied that the Lehman Bank actually suffered this loss, but admitted "[t]he January 2011 billing referenced has the figure $1,271,176.96." Opposition at xxi, ¶ 27. Defendants did not provide evidentiary dispute of the amount. Motion at 10-11, ¶ 28 (citing Gray Decl. ¶¶ 24-28 and Exs. P-S). Plaintiff argues there is no foundation for Exhibits P-R, Opposition at xxi, ¶ 28, but the Gray Declaration provides that foundation. Motion at 11, ¶ 29 (citing Gray Decl. ¶¶ 29-31, 45 and Ex. S. to Decl. of Craig Pino ("Pino Decl.") ¶¶ 1-4 and Exs. A-B to Pino Decl., docket no. 125, filed under seal February 27, 2015).

[37] Motion at 7, ¶ 14 (citing Amended Summary Judgment Order at 16, ¶ 27). Opposition at x, ¶ 14; Opposition at xxii, ¶ 32 (citing Deposition of Gerald Dreyer ("Dreyer Deposition"), May 17, 2012, docket no. 48-2, filed under

not permitted; and

- Argument.[38]

Because these facts were not relied upon, it was not necessary to rule on the objections made to some of them.[39]

### Loan Purchase Agreement and Seller's Guide

On or about April 15, 2005, Lehman Bank (LBB) and SecurityNational entered into a Loan Purchase Agreement (LPA) wherein Lehman Bank would purchase residential mortgage loans from SecurityNational. The LPA incorporated by reference a document known as the Seller's Guide which was issued by Aurora Loan Services.[40]  Many loans were purchased by Lehman Bank from SecurityNational pursuant to the LPA.[41]

The Seller's Guide required SecurityNational to indemnify Lehman Bank (LBB) for any losses resulting from breach of the representations and warranties required of loans sold under the LPA.  For example, the Seller's Guide provided:

> In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this  Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs,

---

seal September 4, 2014). Opposition at xxii, ¶ 33 (citing Dreyer Deposition at 133-135); Motion at 8, ¶ 16 (citing Declaration of Scott Drosdick ("Drosdick Decl.") at ¶ 3, docket no. 121, filed February 27, 2015). Plaintiff objected to the first sentence of the Motion statement. Opposition at xi, ¶ 16 (objecting to Motion at 8 ¶ 16)); *see also* Opposition at xiv, ¶ 17 (objecting to Motion at 8-9,  ¶ 17 (citing Drosdick Decl ¶¶ 4-6)).

[38] Motion at 10, ¶ 25; Motion at 7, ¶ 13 (citing Assignment Agreement). Motion at 8, ¶ 15 (citing Assignment Agreement). Motion at 9, ¶ 19 (citing Assignment Agreement). Motion at 9, ¶ 20 (citing Assignment Agreement). Motion at 9, ¶ 21 (citing Gray Decl. ¶ 5 and Exs. C-D).

[39] The Opposition contained objections to the Drosdick Declaration (Opposition at xi-xiii) and the Gray Declaration (Opposition at xix-xxi). A separate Evidentiary Objection to Declaration and Exhibits [Sic] of Craig Pino or in the Alternative a Motion for Leave of Court to Amend Scheduling Order, docket no. 127, was filed March 30, 2015.

[40] Motion at 3, ¶ 1 (citing Amended Summary Judgment Order at 4, ¶ 5; Gray Decl. ¶ 2; and Gray Decl. Ex. A); Opposition at v, ¶ 1.

[42] Motion at 3-4, ¶ 3 (citing Seller's Guide at 21, § 711, (Dec. 15, 2006), docket no. 47-3; Gray Decl. ¶ 3 and Ex. B). Opposition at v-vi, ¶ 3 (objecting to the partial inclusion of Seller's Guide content, but not objecting to § 711 in particular).

fees and expenses that the purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's guide or the Loan Purchase Agreement. . . . It is understood and agreed that any subsequent holder of any Note acquired hereunder by Purchaser shall be a third party beneficiary of the Loan Purchase Agreement and this Seller's Guide. The indemnification obligations of Seller hereunder shall survive the termination of this Seller's Guide and the related Loan Purchase Agreement.[42]

## Indemnification Agreement

In view of alleged issues with loan losses and defects in loan documentation raised by

Lehman Bank/Aurora Loan Services (LBB) with respect to certain loans sold by

SecurityNational to Lehman Bank, Lehman Bank, Aurora Loan Services and SecurityNational

entered into an Indemnification Agreement dated December 17, 2007, over two years after the

LPA.[43]

The Indemnification Agreement required SecurityNational to make indemnification

payments if there were "Losses" to (i) Lehman Bank "and/or" (ii) Aurora Loan Services or the

(iii) Servicer from loans sold to Lehman Bank by SecurityNational. (In the Indemnification

Agreement, Lehman Bank was referred to as LBB, and Aurora Loan Services was referred to as

Aurora.) The Indemnification Agreement provided:

Section 1. Indemnification. The Seller hereby and at all times hereafter agrees to indemnify and hold LBB and/or Aurora and the Servicer harmless from and against seventy-five percent (75%) of all losses, damages, penalties, fines, forfeitures, legal or other fees, judgments, costs, expenses, debts, obligations and claims which LBB and/or Aurora or the Servicer may have or may hereafter suffer, incur, be put to, pay or lay out, or sustain as a result of any cause related to any current or future default by the mortgagor on the Mortgage Loans with alleged breaches as detailed on the attached Schedule A on an individual basis (collectively, "Losses"). Further, LBB and Aurora agree to release the Seller from any obligation to pay the remaining twenty-five percent (25%) of all losses,

---

[42] Motion at 3-4, ¶ 3 (citing Seller's Guide at 21, § 711, (Dec. 15, 2006), docket no. 47-3; Gray Decl. ¶ 3 and Ex. B). Opposition at v-vi, ¶ 3 (objecting to the partial inclusion of Seller's Guide content, but not objecting to § 711 in particular).

[43] Motion at 4, ¶ 4 (citing Amended Summary Judgment Order at 4, ¶ 7; Gray Decl. at ¶ 6 and Ex. E). Opposition at vi, ¶ 4, points out that Defendants' language departs from the text of the finding in the order. However, the text proposed by Defendants correctly states the effect of the cited paragraph of the Indemnification Agreement.

damages, penalties, fines, forfeitures, legal or other fees, judgments, costs, expenses, debts, obligations and claims which LBB and/or Aurora or the Servicer may have or may hereafter suffer, incur, be put to, pay or lay out, or sustain as a result of any cause related to any current or future default by the mortgagor  on the Mortgage Loans as detailed on the  attached Schedule A on an individual basis. The Losses shall be paid and discharged by Seller through the Deposit specified in Section 5 below. The Losses shall be invoiced or apportioned against the Seller as they are incurred by LBB and/or Aurora or the Servicer, absolutely, and the existence and amount of any such Losses shall be determined by LBB and/or Aurora and the Servicer in their sole and absolute discretion.[44]

The referenced "Schedule A" to the Indemnification Agreement included a list of specified loans.[45]

The Indemnification Agreement was not, however, limited in scope to the loans identified in Schedule A. Section 2 of the Indemnification Agreement provided:

The terms of this Agreement shall also apply to any future Losses sustained by LBB and/or Aurora on any Mortgage Loan purchased from the Seller, with the Deposit set forth in Section 5 applied as described in that section at 100% of the Losses for any loans purchased with an alleged breach that are not identified on Schedule A. The indemnification provided under Section 1 of this Agreement shall remain in full force and effect and shall survive until either the Mortgage Loan has been paid in full, foreclosed, liquidated or otherwise retired and the related Mortgaged Property or REO Property has been liquidated.[46]

In other words, the Indemnification Agreement provided that SecurityNational would be obligated to pay for 75% of losses on loans set forth in its Schedule A, and 100% for all other loans, with payment for each category of losses to be secured by funds from the referenced deposit account.[47]

---

[44] Motion at 4-5,  ¶ 5 (citing Amended Summary Judgment Order at 4, ¶ 9; Gray Decl. at Ex. E). Opposition at vi-vii, ¶ 5, points out that Defendants' language departs from the text of the finding in the Amended Summary Judgment Order. The text here tracks the order.

[45] Motion at 4-5, ¶ 5 (citing Gray Decl. at Ex. E). Opposition at vi-vii, ¶ 5, objects to this sentence as not included in the findings, but it is an accurate statement about the Schedule to the Indemnification Agreement. It is adopted here because no other objection was made.

[46] Motion at 5, ¶ 6 (citing Gray Decl. at Ex. E); Opposition at vii-viii, ¶ 6.

[47] Motion at 5, ¶ 7 (citing Amended Summary Judgment Order at 15, ¶ 22). Opposition at viii, ¶ 7, correctly states that the Defendants ¶ 7 does not track ¶ 22 of the findings in the order, but this statement is a correct synopsis of the effect of the two preceding Indemnification Agreement paragraphs.

Section 5 of the Indemnification Agreement described the obligation to create and replenish the deposit account. SecurityNational agreed to make monthly payments up to but not exceeding $125,000 as needed to keep the balance of the deposit account at $645,000.00.[48]

Lehman Bank was permitted under the Indemnification Agreement to apply deposit funds to cover actual losses from particular mortgage loans after giving notice to SecurityNational that the funds would be applied.[49]

Many of the loans referenced on Schedule A to the Indemnification Agreement resulted in payments from the deposit account.[50] In the Amended Summary Judgment Order, the Court determined that $3,892,973.70 was paid on loans that Lehman Bank transferred to LBHI, out of a total of $4,281,319.27 that SecurityNational paid into the deposit account.[51] Of the difference, $311,553.31 was applied by Lehman Bank on loans that were never sold to LBHI, leaving a balance in the deposit account of $76,792.48.[52] SecurityNational agreed that it would not seek recovery of the $76,792.48.[53]

---

[48] Motion at 5-6, ¶ 8 (citing Amended Summary Judgment Order at 15, ¶ 22; Gray Decl. at Ex. E at § 5(3)). Opposition at viii, ¶ 8, objects that this statement does not include the effect of the Indemnification Agreement provision referenced in the next paragraph. The next paragraph sufficiently clarifies the Indemnification Agreement.

[49] Motion at 6, ¶ 9 (citing Gray Decl. at Ex. E at § 5(4)). Opposition at viii, ¶ 9, objects to the failure of the statement to include the full text of the operative paragraph, but since the Indemnification Agreement is not in dispute, all of its provisions are part of the record.

[50] Motion at 6, ¶ 10 (citing Amended Summary Judgment Order at 6-7 (listing loans)). Opposition at viii-ix, ¶ 10, objects to the characterizations of payments from the account as being for "losses." That language has been removed.

[51] Motion at 6, ¶ 10 (citing Amended Summary Judgment Order at 15, ¶ 23, and 28, ¶ 38). Opposition at viii-ix, ¶ 10, objects to the characterization of the amounts paid on loans that Lehman Bank transferred to LBHI as being "paid for losses" That language has been removed.

[52] Motion at 6, ¶ 10 (citing Amended Summary Judgment Order at 15, ¶ 23). Opposition at viii-ix, ¶ 10, objects to the characterization of the amounts paid on loans that Lehman Bank never transferred to LBHI as being "applied to losses" That language has been removed.

[53] This fact was stipulated at the hearing June 2, 2014. Minute Entry, docket no. 107, June 2, 2014.

### Notice Under Indemnification Agreement

In November 2010, SecurityNational sent a letter expressing concern about overpayment related to the Indemnification Agreement and questioning whether any further payments were due.[54]

In January 2011, Lehman Bank sent SecurityNational a notice of "the Security National deposit account status"[55] for indemnification of its alleged losses on several loans under the Indemnification Agreement. This email stated that: "[u]nder the Agreement Security National should fund an additional $125,000" into the deposit account and noted that there were other losses pending of $3,847,341,46. SecurityNational did not make any payment on that notice.[56] In that January 2011 notice, Lehman Bank also listed other loans it owned that had not yet liquidated, such that indemnification was not yet possible.[57] Those loans have since liquidated, causing alleged losses to Lehman Bank.[58]

The last invoice from Lehman Bank to SecurityNational under the Indemnification Agreement identified in the record is one dated January 31, 2011.[59]

No further invoices were sent by Lehman Bank or on behalf of Lehman Bank.[60]

SecurityNational ceased making payments into the deposit account in April 2011.[61]

---

[54] Opposition at xxii, ¶ 30 (citing Ex. 12 to Price Decl.. The Reply did not address specific additional facts. ". . . Defendants will not burden the record with trivial back-and-forth here." Reply at 4. No objection was made to the November 2010 letter in the prior summary judgment briefing. Defendants' Opposition to Plaintiff's Motion for Summary Judgment at 2, docket no. 54, filed Oct. 11, 2012.

[55] Motion at 6, ¶ 11 (citing Gray Decl. ¶ 7 and Ex. F). Opposition at ix, ¶ 11, refers to the losses as "alleged" which has been added to this paragraph and this paragraph is otherwise substantially clarified.

[56] Motion at 6, ¶ 11 (citing Gray Decl. at ¶¶ 7-10 and Exs. G-I). Opposition at ix, ¶ 11, disputed that "each of those loans contained material breaches of SecurityNational's representations and warranties" so that phrase has been removed.

[57] Motion at 6, ¶ 11 (citing Gray Decl. at ¶¶ 11-23 and Exs. J-O). Opposition at ix, ¶ 11, disputed that these loans were "in breach of SecurityNational's representations and warranties" so that phrase has been removed.

[58] Motion at 6. ¶ 11. Opposition at ix, ¶ 11, refers to losses as "alleged" which has been added here.

[59] Opposition at xxii, ¶ 31 (citing Gray Decl., Ex. F).

[60] Opposition at xxii, ¶ 31 (citing Motion at 13).

LBHI sent an invoice to SecurityNational on April 26, 2011.[62]

## IA Assignment

On March 28, 2011, Lehman Bank and Aurora Loan Services, as assignors, entered into

the IA Assignment with LBHI, as assignee.[63]

In its recitals, the IA Assignment provided:

WHEREAS, certain residential mortgage loans acquired from the Seller breached
representations, warranties, and/or covenants made by the Seller in the Purchase
Agreement, and, in connection therewith, Assignor and Seller entered into that
certain Indemnification Agreement dated December 17, 2007, (the "Agreement")
with respect to such loans (such loans referred to herein as the "Mortgage
Loans");

WHEREAS, certain of the Mortgage Loans were sold, transferred and conveyed
by the Bank to the Assignee (such loans are described in Exhibit A attached
hereto and are referred to herein as the "LBHI Mortgage Loans"), and in
furtherance of the Bank's sale of the LBHI Mortgage Loans to Assignee and of
Assignee's investment purposes in acquiring the LBHI Mortgage Loans, Assignor
and Assignee have agreed to have Assignor assign, transfer and convey to
Assignee any rights and remedies Assignor may have under the Agreement with
respect to the LBHI Mortgage Loans, to the extent such rights and remedies are
assignable under the terms of the Agreement, and Assignor and Assignee now
wish to document that agreement; and

WHEREAS, the Assignor also wishes to waive and release its rights and remedies
against Seller under the Agreement with respect to those Mortgage Loans that
were never sold, transferred or conveyed by the Bank to the assignee.[64]

Section 2 of the IA Assignment states:

Section 2.  Assignment
        (a) To the extent assignable under the terms of the Agreement, the
        Assignor hereby assigns, transfers and conveys to the Assignee all rights it

---

[61] Motion at 10, ¶ 23 (citing Amended Summary Judgment Order at 18, ¶ 30). Opposition at xviii, ¶ 23, purports to dispute this fact without identifying an inaccuracy.

[62] Opposition at xxii, ¶ 34 (citing Email from Matt Spohn to Gifford Price (April 26, 2011), Ex. 8 to Price Decl., docket no. 47-8, filed under seal Sep. 4, 2012).

[63] Motion at 6, ¶ 12 (citing Amended Summary Judgment Order at 16, ¶ 26). Opposition at ix, ¶ 12.

[64] Motion at 7, ¶ 13 (citing IA Assignment). Opposition at ix-x, ¶ 13, disputed the first paragraph of the Motion statement, and asserts that the IA Assignment speaks for itself, but the only portion provided in this set of facts quotes the IA Assignment.

may have under the Agreement with respect to the LBHI Mortgage Loans, along with any or all of the remedies Assignor may have against the Seller under the Agreement with respect to the LBHI Mortgage Loans, including, without limitation, all repurchase and/or indemnification remedies and/or claims for damages.

(b) The Assignee hereby accepts such assignment, and shall be entitled to exercise all such rights and remedies of the Assignor under the Agreement with respect to the LBHI Mortgage Loans, as if the Assignee had been a party to such Agreement.[65]

The [IA] Assignment [] opens with [the] recital about the waiver and release [quoted above, reproduced below with clarifying identifications]:

WHEREAS, the Assignor [Lehman Bank and Aurora] also wishes to waive and release its rights and remedies against Seller [SecurityNational] under the [Assignment] Agreement with respect to those Mortgage Loans that were never sold, transferred or conveyed by the [Lehman] Bank to the Assignee [LBHI].[66]

Section 1 of the IA Assignment also included a provision waiving and releasing Lehman Bank's rights against SecurityNational under the Indemnification Agreement with respect to mortgage loans that were not assigned to LBHI:

Section 1. Waiver and Release.
Assignor [Lehman Bank and Aurora] hereby waives and releases all of its rights and remedies against Seller [SecurityNational] under the [Assignment] Agreement with respect to those Mortgage Loans that are not identified on Exhibit A to this Assignment Agreement.[67]

Paragraph 8 of the [IA] Assignment Agreement also refers to the waiver and release:

Section 8. Benefits of Agreement.
Nothing in this Assignment Agreement, express or implied, shall give to any person, other than the parties to this Assignment Agreement and their successors and assigns hereunder, any benefit or any legal or equitable right,

---

[65] Motion at 8, ¶ 15 (citing IA Assignment § 2 (emphasis added)). Opposition at x-xi, ¶ 15, disputed the first sentence of the Motion statement, and asserts that the IA Assignment speaks for itself, but the only portion provided in this set of facts quotes the IA Assignment..

[66] Opposition at xxiii-xxiv, ¶ 38 (citing IA Assignment).

[67] Motion at 9, ¶ 18 (citing IA Assignment § 1). Opposition at xiv-xvii, ¶ 18 objected to a lead-in phrase which has been removed.

power, remedy or claim under this Assignment Agreement, except: that the waiver and release in Section 1 herein shall benefit the Seller.[68]

The [IA] Assignment Agreement included a choice of law provision stating that it "shall be governed by and construed in accordance with the laws of the State of New York, without reference to its conflict of law provisions . . . ."[69]

The Court's [Amended] Summary Judgment Order held that the IA Assignment Agreement did not convey to LBHI any rights to be indemnified from the deposit account for losses on the loans sold by SecurityNational to Lehman Bank and transferred to LBHI. The Court held that Lehman Bank could only assign rights to indemnification for losses suffered by Lehman Bank, and that Lehman Bank had no such losses because it had been paid in full by LBHI.[70]

## DISCUSSION

### Defendants Waived their Rights
### under the Indemnification Agreement

As recited in the facts, the IA Assignment included many references to the waiver of Defendants' Indemnification Agreement rights against SecurityNational. The IA Assignment opens with a recital about the waiver and release:

> WHEREAS, the Assignor [Lehman Bank and Aurora] also wishes to waive and release its rights and remedies against Seller [SecurityNational] under the [Assignment] Agreement with respect to those Mortgage Loans that were never sold, transferred or conveyed by the [Lehman] Bank to the Assignee [LBHI].[71]

---

[68] Opposition at xxiii-xxiv, ¶ 38 (citing IA Assignment § 8).

[69] Motion at 10, ¶ 22 (citing IA Assignment § 3). Opposition at xviii, ¶ 22, objected to a comparative statement to other documents. It has been removed.

[70] Motion at 10, ¶ 24 (citing Amended Summary Judgment Order at 27, ¶¶ 34-35) (emphasis in Motion).

[71] Opposition at xxiii-xxiv, ¶ 38 (citing IA Assignment).

Section 1 of the IA Assignment includes a provision waiving and releasing Lehman

Bank's rights against SecurityNational under the Indemnification Agreement with respect to

mortgage loans that were not assigned to LBHI:

> Section 1. <u>Waiver and Release.</u>
> Assignor hereby waives and releases all of its rights and remedies against Seller [SecurityNational] under the [Assignment] Agreement with respect to those Mortgage Loans that are not identified on Exhibit A to this Assignment Agreement.[72]

Paragraph 8 of the Assignment Agreement also refers to the waiver and release:

> Section 8. <u>Benefits of Agreement.</u>
> Nothing in this Assignment Agreement, express or implied, shall give to any person, other than the parties to this Assignment Agreement and their successors and assigns hereunder, any benefit or any legal or equitable right, power, remedy or claim under this Assignment Agreement, except: that the waiver and release in Section 1 herein shall benefit the Seller.[73]

The repeated references to the waiver are remarkable given the short length of the IA

Assignment.

Defendants argue that "enforcement of the waiver between Lehman Bank and LBHI for

the benefit of SecurityNational would violate the expressed intent of the parties to the IA

Assignment and would be unfair."[74] This argument is contrary to the express language of the IA

Assignment.

The waiver is consistent with the full payment by LBHI of the face value of the loans

transferred to LBHI. As the Amended Summary Judgment Order concluded:

> 25.    When each of the Loans was sold to LBHI, Lehman Bank was fully compensated. At the time of each sale, Lehman Bank was paid the full amount it

---

[72] IA Assignment § 1.

[73] IA Assignment § 8.

[74] Motion at 2. *See also* Motion at 19 ("[W]aiver of Lehman Bank's rights in the Assignment Agreement is ineffective and contrary to the parties' intention.") and Reply at 16 ("the purported waiver of rights by Lehman Bank in the Assignment Agreement cannot justly be enforced.")

had expended on each of the Loans. Most of the sales occurred before the Indemnity Agreement was signed.

26.    Further, LBHI's purchasing of the Loans from Lehman Bank without recourse was part of a business plan or system. The plan or system was to protect the capital of Lehman Bank so as to enhance its capacity to purchase loans for the sale to, and benefit of, LBHI.[75]

Defendants correctly note that a valid waiver is not the end of their claims. "Lehman Bank may still have potential claims for indemnification of losses under the Seller's Guide and LPA to be asserted in a separate action if necessary."[76] The LPA is not the basis of any claims in this case so that statement is true. Also, Defendants have yet to plead or adjudicate their claim that "the [IA] Assignment Agreement did not purport to waive or release any rights Lehman Bank may have under the LPA or the Seller's Guide on loans that were not sold to LBHI."[77]

LBHI is not a party to this case, and rescission[78] of the IA Assignment is not available without LBHI's presence. Defendants' arguments that there is a failure of consideration;[79] frustration of purpose[80] and that "the parties demonstrably had a 'mutual misunderstanding of the law . . . '"[81] and failed to achieve "a genuine 'meeting of the minds'"[82] can only be litigated with LBHI present,[83] when an affirmative claim is made for rescission or reformation of the IA Assignment, signed by Defendants and LBHI.

---

[75] Amended Summary Judgment Order at 25.

[76] Reply at 10.

[77] Motion at 18.

[78] Motion at 15.

[79] *Id.*

[80] *Id.* at 17.

[81] *Id.* at 16.

[82] *Id.*

[83] 4 Bus. & Com. Litig. Fed. Cts. § 46:59 (3d ed.) ("Rescission by agreement requires mutual assent of all parties involved in the original contract.") (citing cases).

While it is true that "[a] party asserting rights as a third-party beneficiary must establish . . . the existence of a valid and binding contract between other parties,"[84] an agreement appearing valid is presumed valid until decreed otherwise.[85] This action between SecurityNational and Defendants has neither the pleadings nor parties to determine the validity of the IA Assignment.

It is not clear why Defendants chose to waive and release their rights through the IA Assignment.. But Defendants' paperwork has not always been clear. For example, the LPA Assignment (which remarkably assigned Loan Purchase Agreements with hundreds of mortgage originators in only four pages) was amended in 2010 to backtrack Defendants' wholesale assignment of the LPAs to LBHI. The amendment does not explain the cause of the claimed error in the LPA Assignment but acknowledges and attempts to correct it:

> For the avoidance of doubt, to the extent Assignor unintentionally assigned to Assignee its rights in and to the Agreements as they pertain to the Mortgage Loans that were never sold, transferred or conveyed from Assignor to Assignee, Assignee hereby assigns, transfer and conveys to Assignor all of its rights in and to the Agreements only as they pertain to the Mortgage Loans that were never sold, transferred or conveyed from Assignor to Assignee . . . .[86]

Because the IA Assignment clearly "waives and releases all of [Defendants'] rights and remedies against [SecurityNational] under the [Indemnification] Agreement with respect to those Mortgage Loans that are not identified on Exhibit A to [the IA Assignment,]"[87] Defendants may

---

[84] Motion at 15, citing *State of California Public Employees' Retirement System v. Shearman & Sterling,* 741 N.E.2d 101, 104 (N.Y. 2000).

[85] 17B C.J.S. Contracts § 927 ("Contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties, and it imposes a heavy burden on the party seeking to disprove those presumptions."); 17A Am. Jur. 2d Contracts § 320 ("Contracts are presumed to be legal. Thus, there is a presumption in favor of the legality of a contract unless the illegality appears upon its face.") (citing cases).

[86] LPA Assignment Amendment § 2, Ex. D to Gray Decl., docket no. 124-5, filed under seal Feb. 27, 2015.

[87] IA Assignment § 1 ("Waiver and Release").

not enforce the Indemnification Agreement against SecurityNational and thus may not make an

offset as asserted in their defense.

## Defendants Have No "Right to Replenishment"

Defendants' motion also seeks an order "directing that Plaintiff SecurityNational

Mortgage Company (SecurityNational) replenish and continue to fund the deposit account

established under the Indemnification Agreement."[88] Defendants did not make an affirmative

plea for this relief, either as a defense or a counterclaim. All they asked for was an offset of sums

due under the Indemnification Agreement.

> SecurityNational Mortgage's damages, if any, are limited in whole or part by
> offset for sums still owed by SecurityNational Mortgage under the
> Indemnification Agreement.[89]

Defendants argue specific pleading for replenishment is not required:

> The fact that Defendants [Answer] did not make specific reference to
> "replenishment" of the settlement fund is irrelevant. Replenishment is not an
> "avoidance or affirmative defense" to be pled affirmatively under Fed R. Civ. P.
> 8(c)(1). Replenishment of the deposit account is simply a contractually-required
> means of securing payment to Lehman Bank for losses on loans originated by
> SecurityNational.[90]

A "contractually-required means of securing payment" is the basis of a *claim*. If Defendants

wanted to enforce the Indemnification Agreement against SecurityNational, they should have

made an affirmative claim. Mere offset does not require an affirmative claim but is an

---

[88] Motion at 1. *See also* Motion at 19 ("[T]he Indemnification Agreement also remains in effect, and creates a
continuing obligation for SecurityNational to replenish the deposit account to cover future losses. The Court should
enter a judgment . . . permitting Lehman Bank to bill its losses to SecurityNational as provided under the
Indemnification Agreement."); Reply at 8 ("If the waiver in the Assignment Agreement is ineffective, the
Indemnification Agreement remains in effect between SecurityNational and Lehman Bank; losses may therefore be
collected from the deposit account, as they were routinely prior to this litigation, or set off against any judgment
amount based on notice and invoicing."); Reply at 16 ("Lehman Bank has continuing rights to indemnification under
the Indemnification Agreement, including the right to have payment for such indemnification secured by a deposit
account.").

[89] Answer at 4, ¶ 4.

[90] Reply at 9.

affirmative defense. But compelling a deposit into an account, in enforcement of terms of an agreement, is a *claim*. Without a *claim* for replenishment, Defendants cannot be heard on the replenishment issue.

But more importantly, even if Defendants had stated a claim against SecurityNational for specific performance of the Indemnification Agreement, they waived their rights under the Indemnification Agreement, in the IA Assignment. They could not require SecurityNational to make deposits under the Indemnification Agreement.

## CONCLUSION

This order denies Defendants the right to enforce the Indemnification Agreement, due to their clear waiver of the right to do so in the IA Assignment. The Amended Summary Judgment Order held that the Indemnification Agreement does not give Defendants the right to seek indemnity for loan losses suffered by LBHI, a stranger to that agreement. The basis of that order is the New York law of indemnity, strictly limiting indemnity obligations to their named beneficiaries. If that order is given effect in the Related Case, LBHI would not have a right to indemnity on its losses because it is a stranger to the Indemnification Agreement. LBHI might have a right to indemnity under the Indemnification Agreement on losses suffered by Defendants. That has not been adjudicated here because it is not plead here and because LBHI is not a party to this case. It appears not to be plead in the Related Case.

Even though Defendants waived their rights under the Indemnification Agreement, and LBHI does not have a right to indemnity under the Indemnification Agreement, Defendants and LBHI may still have other claims. For instance, this case has not determined any claims under the LPA. LBHI's claims on its loans, under the LPA and the LPA Assignment, as amended, will be determined in the Related Case. And as Defendants suggested, they "may still have potential

claims for indemnification of losses under the Seller's Guide and LPA to be asserted in a separate action if necessary."[91]

The Amended Summary Judgment Order and this order are not one sided. The Indemnification Agreement also had benefits for SecurityNational. That agreement appeared to protect SecurityNational from 25% of losses on the loans identified in that document, and provided a metered financial deposit obligation for SecurityNational to make periodic capped deposits, buffering financial impact on SecurityNational. There are no such protections in the LPA.

## ORDER

IT IS HEREBY ORDERED that SecurityNational's Motion for Partial Summary Judgment[92] is GRANTED and Defendants' Motion for Partial Summary Judgment on the Affirmative Defense of Offset and Replenishment[93] is DENIED.

IT IS FURTHER ORDERED that the parties shall meet, confer and within fourteen days file a joint motion with a proposed schedule for resolution of any remaining issues in the case.

Dated October 24, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[91] Reply at 10.

[92] SecurityNational's Motion for Partial Summary Judgment ("Cross Motion"), docket no 128, filed March 30, 2015.

[93] Defendants' Motion for Partial Summary Judgment on the Affirmative Defense of Offset and Replenishment ("Motion"), docket no. 120, filed February 27, 2015.